Our next case for argument is 25-1236, Exelixis, Inc. v. MSN Laboratories. Mr. Klein, please proceed when you're ready. Good morning, and may it please the Court. The core issue on appeal, which I do not believe this Court has ever addressed, is whether a patented polymorph genus that claims an undisclosed polymorph violates Section 112. And it does, because polymorphs are notorious for being highly unpredictable. The trial court found, and there's no dispute, that the inventors here actually invented and disclosed only two polymorphs. Yet the Court read the claiming a broader polymorph genus. This is now undisputed. A skilled artisan can't visualize or recognize members of a polymorph genus, because you can't predict anything about new polymorphs. As plaintiff's expert conceded, a skilled artisan can't predict new polymorphs. I'm going to ask you, Mr. Klein, if you have any challenge to the judge's reliance on the structure and the process. You might take issue with his factual findings, but do you The Court relied on the term crystalline, which is a broad outline of a genus perimeter. That's the quote from the Regence case. And what the Court said is, if there's no functional limitation in the claim, you can zoom way out and basically say, this is a claim that covers polymorphs, and therefore a written description is satisfied. And that is not the law. The law, and you can go back to Ariad, makes it clear. You have to consider the predictability or unpredictability of the art. And the District Court completely discounted the fact that when you're talking about polymorphs, it's hard to think of technology that's more unpredictable. That feels very fact-specific. My question really wasn't exactly that. My question was more basic, which is that the judge was relying on Ariad and Glaxer-Smith-Klein to understand what the test is, just generally the legal standard. You could either have enough species examples that you disclose the genus, or you could have a structure and maybe a process of making that structure from which you could divine that that would be enough to disclose the genus. Do you agree that that test, broadly stated, is the right legal standard? The Court cited the right legal standard. That's all I wanted to know.  Thank you. But I — and the standard of review is clear error because written description is considered a question of fact. But there are nine findings of fact. The first nine we're not challenging on appeal. The only finding of fact we're challenging on appeal is the ultimate conclusion, that the disclosure here satisfies the legal standard. That's application of the law. This — there's no substantive difference between what we have in this appeal and a summary judgment argument. And so we're saying that the Court misapplied the law. I'm not saying the Court cited the wrong legal standard. And that gets to the point that crystalline is just — it's just the facts. And if you call — if you — the claim — you're calling the claims having a common crystalline function is basically the same thing as saying the claims cover polymorphs. And that can distinguish what's inside the fence from what's outside the fence. But you can't visualize or recognize what's inside the fence. Your view is that because only N1 and N2 were disclosed, S is not included. I mean, I guess you can't go beyond that, in other words. Right. Right. Okay. That their patent should be limited to N1 and N2. Absolutely. Because — Do you have any cases where we have held that you're just limited to the examples that are disclosed in the specification? In this kind of area? Well, that's why I started, because I'd never seen a claim — a claim that covers a polymorph genus before. And I've been doing this a long time. Typically, you claim a polymorph and you describe it with XRPD peaks. And that's what MSN did with its own patent. MSN has its form S patent. And it — there was no obviousness rejection, even though the exact same disclosure — the exact same disclosure here was prior R. There was no obviousness objection. There's no unexpected results. There's no functional limitation. And that's because it has been well recognized in the Court's precedent, polymorphs are unpredictable. If you find a new polymorph, that itself can be — I mean, there's factual evidence on that, too. I mean, like, in this case, the claims are to a particular CABO's, an antinib, or the claim salt in crystalline form, right? Correct. Okay. And — but there's lots of factual evidence and expert testimony on just how broad that is, right? And how many different varieties there is, right? Well — I mean, it's not claimed based on function, right? It's based on structure. Do I have that correct? You are correct. There's no functional limitation. But Ariad also makes it clear that the written description applies differently if the art's unpredictable. And their expert conceded a person of skill in the art, I'm quoting, would not know whether other crystalline forms even existed based on the disclosure of the specification, Appendix 2062. So you can't even tell what's in the genus if anything else is in the genus. Can I move you just momentarily to another issue? As you know, we've had a flurry of motions in front of the Court this week, starting with yours, and the weird situation where you, who raised an issue, is now — you're now arguing that you don't have standing, even though you're the one that raised the issue. Do I have that right? Well, when we raised the issue, we did have standing. It's okay. I understand. But you're saying your issue that you've raised is moot. So why haven't you just withdrawn it? I mean, it's your issue to withdraw. I think we have to move to dismiss, for lack of jurisdiction, because the relief we want is to ensure that there is no issue preclusion. I mean, that's the concern. If we just drop the appeal, then the final judgment below would stand, and — So, but you're arguing you don't have standing. Well, we don't — I mean, you're arguing it's moot, right? We're arguing it's moot. You know that currently we cannot address this issue, right? That's what you're arguing. That is — yes, correct. Okay. Okay. But to be clear, we did have standing, and the matter was not moot when we noticed our appeal. I understand the difference. Okay. All right. Thank you for that. And we were responding to — I mean, to be candid, we got the Court's order. We did the research. We reached out to opposing counsel. We met and conferred, and we decided the right thing to do is to move to dismiss. It's kind of funny because you're arguing, on the one hand, you're saying the — there isn't — the issue is not ripe or not moot because collateral estoppel effects could apply. But at the same time, you're saying — I think you're saying collateral estoppel effects won't apply. Therefore, that's why there isn't — the issue is moot. And at the same time, you're arguing because there might be collateral estoppel effects, please vacate and remand — vacate the decision below under U.S. Bancorp. How do you bring those two positions you have? You're — you've got a fine line that you're trying to weave there. Yeah. We believe the issue is moot because there is — I mean, we acknowledge there's a hypothetical possibility of collateral consequences. We're just — our position is — I mean, opposing counsel is arguing the collateral estoppel. They need to have the ruling for collateral purposes. Right. And we're — our position is they are vastly overstating the importance. This is not a threshold situation like a statute of limitations, a forum selection clause, what a statute means. This is potential issue preclusion relating to one aspect of one defense among many with a co-defendant who will not be estopped in a trial that is set to happen in November. There might not even be a decision by the court by then. And even if they file an issue preclusion motion, Judge Andrews might say, why should I even bother ruling on this because I've got another defendant who's not going to be precluded? Let's go forward with the  If we were told the issue was moot, what — I thought that if an appellate court held that an issue on appeal was moot, that collateral estoppel would not apply. You know, I would think that because the parties were not able to continue to challenge the issue on appeal, how could there possibly be any estoppel effect? But maybe my understanding of the law is incorrect. I agree with you, but there is — I mean, do you have a case law, you know, that says otherwise? I don't know, but the regular practice is to vacate the decision below to avoid an issue with regard to issue preclusion. So there's no question. It's — it might be — it's not required, correct? It's not required. It's the established practice when the mootness does not occur — It's when the mootness is caused by — By the other side. — the other side. I already have — Correct. Okay. If I — if there are no further questions, I'll reserve the remaining time. Very good. Okay, Mr. Saunders? So may it please the Court, the crystalline L-malate salts of cabozantinib are described and claimed by their structure, not by their function. Written description is an issue of fact, and there's no clear error in the factual finding that the common structural features here — chemical name, the formula, and the crystalline structure — would allow a skilled artisan to visualize or recognize the claimed subject matter. And therefore, the unpredictability question, is irrelevant? Is that your view? Well, I think the — I mean, the parties had disputes about the size of the genus, but yes, in this Court's GSK case, the solvates there had unpredictability. There was evidence in the record there. You can see in the district court opinion of sort of some of the struggles to find it. But as a matter of written description, the Court said these aren't functional claims, so we're not sort of going into unpredictability around the function. We're looking, and the structure is disclosed. Essentially in the exact same terms that it is claimed. And so as a matter of written description, that's the end of the analysis. There may be a separate enablement argument that we don't have here that someone would make around the unpredictability. If I understand it, because it's not described by function, as in a particular compound to achieve X or Y, that reduces some of the unknown nature of the scope of the claim.  And what the inventor invented. I mean, the question, right, is did the inventor invent this? Would a person of ordinary skill in the art reading the specification understand the inventor how to have invented the scope of the claims? And when you have functional language, that makes it more complicated. Exactly. You don't know what the what is. But here, but we also know you don't have to have actual reduction to practice of every species. And so you can have a circumstance, you know, if they had just come in and said, we're disclosing one form, and then after the fact they're trying to say, oh, no, no, wait, we're talking about crystalline, right? But the specification is very clear. They disclose the L-malate salt. They specifically say, quote, another aspect of this disclosure relates to crystalline forms of compound one. That's the L-malate salt. So it's a direct description. And what was important to them is that crystalline form, that shared structure. And then on top of that, we have the original claims from the very beginning are claiming it in those terms. The crystalline L-malate salt. That's not dispositive, though, based on Ariadne, right? I mean, Ariadne is very clear that the original claims have to have a person of, you still have to apply the Ariadne test to original claims. Correct, you do. I will say that when people get tripped up and not having the disclosure in the original claims, it's almost always because the original claims are using that functional language, as opposed to the original claims here using the exact same structural language. So I think we, you know, GSK, we think is right on point in terms of the proper way to analyze this. And we haven't seen any case cited here that's even remotely in the ballpark, right? All of their structural cases, ICU medical was disclosure of spike valve, spike valve, spike valve, and then they try to claim spikeless. In the Tronzo case they cite, you essentially have disclaimer of anything other than the conical cups. There's no criticism of certain kinds of cavities enanted in the claim salt. I'm just going to call it the claim salt. Yes, absolutely not. And they make very clear when you read that specification that you have that salt, you have crystalline structure, that's what matters. And then on top of this, I would say, you know, we remember that this is an issue in which they bear the burden of proof, clear and convincing evidence. And they came in and tried to point to some minor differences between species. And the district court made a ruling on that, this is page 26 of the appendix, and said MSN boldly asserts that there are differences between N1, N2, and the rest of the genus without giving me a framework to evaluate such differences. Basically it says you're not showing me importance to the differences. And remember the backdrop... The important thing is there's no functional language that I would account for and care about those differences anyway.  Exactly. And we don't have... I mean, the backdrop here too is we have a Hatch-Watson case where they're saying our drug is bioequivalent to yours. But that's not part of the written description analysis here where it's functional. The district court judge also talked about how the specification disclosed the process by which to achieve the structure. In your view, how does that inform the analysis of whether a person of ordinary skill may understand an inventor to have invented what is claimed? Yeah, I think it certainly helps us. I'm not sure it's dispositive, but there's extensive disclosure in the specification of how to achieve crystallization. And so I think that certainly it takes any added uncertainty you would have there. It's a helpful fact. It's a helpful fact. That's dispositive. All right. Do you want to talk about mootness? You are arguing that the case is not moot because of potential collateral estoppel effects in another pending case for a different set of claims and different patent, right? Correct. And to be clear, the context here, the reason we didn't burden this court with a fight about the Glyden limitation is because by the time it came to make that decision, we had the parallel patent. We've shown you the claims in the supplemental brief that we filed. And it's essentially right on point, except for— You're saying you made a strategic decision. We made a decision that the controversy at that point had shifted away from infringement of the Glyden limitation to the broader context here. The fight in that parallel proceeding is over invalidity. And that fight is directly on point with the issues that they have raised in their appeal, right? There's a finding here by the court that following the Brown process isn't going to inherently result in the claim. Since you're getting into the merits, let me ask you a question. Did the district court clearly err in finding that there were differences? I mean, he seemed to rely on there being differences between the Brown process and the process used for at least one of the batches and seemed to equate that to the process used for all three batches. Why isn't that clearly erroneous to have relied on the submission to the FDA for one of the GMP batch and infer that that also applied to the other two batches? Well, I think it's because the specific reference to changes there was showing— It didn't then say, oh, there are no changes in other batches. There wasn't a negative implication there. The specific reference to that batch was really highlighting the fact that this is an area in which there are changes. The backdrop is the argument of this follows Brown is based on its Appendix 3.1.1.5. It's the diagram of the different steps. It doesn't have times. It doesn't have temperatures. And so you take that plus the fact that there's an express disclosure that for one of the batches there are these changes. And then all this has to go through the lens of MSN is the party with the burden of proof. So maybe I'm misreading the opinion. But I thought maybe—I mean, I hear what you're saying. But I thought maybe the opinion was relying on one of the batches having the changes to be all of the batches have changes. I think it's—and if that's the case, that seems like a little—that could be wrong. At least that portion requiring a vacate remand anyway. But I don't know. But you are—your position is that—how is it that you should be able to—you've got one case that you've cited to us. I think it's Comcast and the briefing of yours that we just got this morning, I think. Why is it that that case relates to this case in allowing us to consider an issue that is mute, arguably mute? But I think the point is it's not moot because of that continuing effect on the parallel proceeding. That's exactly what happened in Comcast. Comcast, it was coming up from the ITC. The patent had expired. And so that particular partial exclusion order from the ITC was done upon expiration of the patent. Do you agree, though, that in Comcast it uses very—it says may, may, may. The court may consider it. There's nothing in here that's requiring consideration of the issue. Well, but I think—I mean, the argument is jurisdictional, right? So if it may consider it, then that has answered the jurisdictional question. If we get into the discretionary question, then I think this is even more decisively in our favor because what they're asking to do is take all the work that went into a full trial and these factual findings and throw it out and start over and re-litigate the exact same issues, right? What did the re-dispatches show? Was there inherency? As we've cited in our supplemental brief, they're actually trying to go into those exact same issues. And so— You are no longer contending that they infringe this claim, right? We are no longer contending that they infringe Claim 3 of this patent. Claim 3 of this patent. Right. But you want us to go ahead and analyze whether Claim 3 of the patent is valid or not. Correct. I mean, the Supreme Court has recognized that invalidity and infringement are two different issues, right? You didn't file a D.J. here, did you? You didn't file a counterclaim to the D.J.? No, we did. I mean, remember, this is a Hatch-Waxman case, right?  So we initiated the case, and in our complaint, we asked for a declaration that the patent is not invalid. It's a little different, though. So here, the patent is not infringed, so where's the case of controversy? You're arguing there's still case of controversy based on other claims that are pending.  Because the validity, the issue that's left on appeal, which is the validity of this patent, directly carries over to the validity of the 039 patent in that scene. And that's why you can line up this Court's factual findings, say this Court made the finding, and they are arguing the exact opposite in that other proceeding, which they can't do. Do you know what the exact issues were that this Court reviewed from the ITC action in Comcast? In Comcast, it was a mix of issues. There was a question of whether Comcast was an importer was one of the questions, and then there were questions related to this Court's en banc decision in Suprema, sort of the nature of what was coming in, the excellent set-top boxes, which would then have to be combined with Comcast servers in the United States. So there was a question over whether it's an article. But to be clear, on the issue of, oh, does it just have to be a threshold issue or a dispositive ruling? I mean, the Supreme Court has a canonical case from the 80s, National Golden Taxi v. Los Angeles, and it was a taxi company. It didn't like that its license hadn't been renewed. By the time it got to the Court, even if the license had been renewed, it would have been expired anyway. So it was moot in that proceeding. But the Supreme Court said this isn't moot because whether you were applying for a brand-new license or applying for sort of further renewal in the other proceeding, your sort of new license request, it would affect how the Court looked at it there. It didn't mean the Court was definitely going to rule one way or the other on it. It doesn't have to be a dispositive issue. We're just talking about the constitutional minimum for there to be a case or controversy, and it is enough that we are going to have to relitigate the exact same issues already decided by this Court. But with a different claim, with a different scope. I mean, I understand very similar scope, but different scope. So you would be relying on—what would you be relying on? Issue preclusion? Yeah, issue preclusion. So to be clear— Different claim limitations. Yes, again, because— Some overlapping, some identical. Well, massive. I mean, we have—the fight that we're talking about there to which preclusion is going to apply is the exact same fight. It's whether Brown—  And to be clear— Whether Brown results in the recited one-to-one limitation. Correct. Okay. It's a little harder for them in that case because the threshold is even lower. But a fortiori, if they didn't inherently prove below the 200 part per million threshold here, then they will fail on the below 100. So the question that—here, where you're arguing that this—our decision on appeal could relate to the question of whether a prior reference teaches a particular claim limitation. Yes. Yeah, because issue preclusion can operate on the level, and in fact, it's sort of the most striking process. There's the finding here, the Brown process, no inherency. Their expert is arguing, quote, if a POSA faithfully follows the Brown process as Regis did, the POSA would necessarily and inherently obtain cabozantinib L-malate containing 200 parts per million or less. So we will be—there's a live case for controversy here because if this judgment goes away, I mean, if we don't resolve it as they've done on their appeal, then we're going to end up litigating the exact same issue. And so, to be clear, there are definitely cases where the future effects are too speculative. There may not ever be a second case, et cetera, et cetera. Here, even before we dropped our cross-appeal, the second case was already pending issue was joined, and so it's an ongoing proceeding, very direct effect. Okay. Thank you. Thank you. Starting with the mootness point, because that's where we ended, just very quickly, Regis did follow the Brown process. We now know that for sure, 100 percent sure, that will be addressed in the new litigation. And that's why they want to invoke issue preclusion, because they know that what Judge Andrews found in the first case is factually incorrect. The reality is that Azerdi— What does that have to do with whether it's moot? Well, that—I'm explaining—I'm giving you context as to why they want to invoke issue preclusion. They're just trying to color us against their argument, but without addressing the legal merit of it. Well, the legal merit—I'm giving you the context. The legal merit is that Azerdi is a co-defendant, and they are not going to be bound by issue preclusion no matter what. This case is going to be tried in November. If Azerdi wins on whatever theory it presents, and the patent is invalid, MSN wins. They can't assert infringement of an invalid patent. So Judge Andrews would never have to reach the question of issue preclusion if Azerdi proves that the inherent argument that they want to preclude MSN. Just to make sure I understand. Yes. You're saying issue preclusion can't possibly apply because it's a different party. It doesn't apply to Azerdi. I don't think they—they don't dispute that. They don't dispute that. So if Azerdi wins the consolidated case, it's a validity issue. We win, too. The judge never has to address issue preclusion. That's why it's moot and speculative. As for the polymorph issue, our— Do you have a legal argument in response to Judge Moore's question? Do you have any legal point you want to make on it, though? The only— Applying legally, we shouldn't be thinking about collateral shopping. There's not a case directly on point with this situation. I mean, the collateral consequences we see are things like statute of limitations or form selection, which is very basic and threshold. This is very, very needy about a particular claim in a particular defense when there are other defenses. I will also note that this is a declaratory judgment action claim. So the court has— I mean, the broadcast involved a very specific issue, too, right? Those are very specific issues. As specific as this, I would say. It is, but here it is— I mean, case specific. Yeah, I mean, there's not a hard and fast rule in this context with regard to mootness. You can see cases saying collateral—possible collateral consequences don't matter. Then you see cases like Comcast, just to be candid with the court. There's not, you know, a bright line I can give you. I can tell you that it's a declaratory judgment action, and under the statute, you do have discretion. If you decide, well, you know, we think it's moot, case law isn't clear, you still have discretion to say, even if it's a close call, it's a declaratory judgment action. We don't see any collateral consequences here where it's very speculative, and we're going to opt out. You still have to have standing for—I mean, if an issue is moot, do you really think that we could consider something even though there's no actual controversy anymore? No, I'm saying the opposite. Okay. If it's moot, you don't have jurisdiction, for sure. If it's a close call and you're not sure if it's moot, you still have discretion.  Okay. As for the polymorph, our main point is that if you invent graphite, you can't claim a diamond. That's the crux of our argument, even though both graphite and a diamond are polymorphs of carbon. Those are two polymorphs. The claims are unique here. They claim a polymorph genus. They disclose two and only two polymorphs. No one knows how big this gene is. A plaintiff's expert doesn't know if there's a third member if you read the disclosure. It's completely speculative, hypothetical, and unpredictable because we're talking about polymorphs. Polymorphs, to be clear, are very different from salts and solvates. I don't understand the unpredictability. I still don't. I didn't understand it at your first argument. I don't understand it now. If this is a—their argument is this is a claim defined by a structural similarity. What does predictability have to do with it? That's the functional aspect. Judge Stoll started this argument by asking you, do you accept that there are two ways to establish written description support? One is functional and the other is structural. I still don't understand why you keep bringing up unpredictability when we're in a structural realm. Because the structures of polymorphs are unique. They're like snowflakes. Every polymorph is unique.  Keep going. Okay. Every polymorph is distinguished from another polymorph by XRPD peaks, and that's why polymorph claims typically claim XRPD peaks. There's no way to distinguish— there's no way to know if there's another polymorph from the disclosure. There's no way to know. I say that all the time. All right. I thank both counsel. This case is taken under submission.